## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| MINTABLE PTE. LTD., | **Case No.: 23-cv-08215** |
| Plaintiff, | |
| v. | |
| MINTOLOGY INC. and CINDY JIN, both in her individual capacity and as CEO of Mintology, Inc., | |
| Defendants. | |

## PLAINTIFF'S PROPOSED
## FINDINGS OF FACT AND CONCLUSIONS OF LAW

## **Table of Contents**

PROPOSED FINDINGS OF FACT ........................................................................1

    A.    Parties ...........................................................................................1

    B.    Plaintiff was the first user of the "Mintology" mark in commerce. ............1

    C.    Plaintiff sent multiple cease-and-desist letters to Defendant......................2

    D.    Plaintiff continues to use the "Mintology" mark in commerce but is confused with Defendant's business. ...........................................3

PROPOSED CONCLUSIONS OF LAW ...............................................................4

    A.    The Court has Subject Matter Jurisdiction and Personal Jurisdiction over Defendant. ...............................................................................4

    B.    Defendant is liable for trademark infringement under federal and New York state law.................................................................................5

    C.    Defendant is liable for trademark dilution in violation of N.Y. Gen. Bus. Law § 360-l. ...........................................................................9

    D.    Plaintiff is entitled to a permanent injunction...........................................11

    E.    Plaintiff is entitled to attorneys' fees. ......................................................14

## Table of Authorities

**Page(s)**

**Cases**

*A.M. Surgical, Inc. v. Akhtar*,
No. 15-CV-1318 (ADS)(SIL), 2016 WL 11543560 (E.D.N.Y. Apr. 19, 2016)............5, 10, 11

*Abercrombie & Fitch Co. v. Hunting World, Inc.*,
537 F.2d 4 (2d Cir. 1976)..........................................................................................................5

*Allied Maint. Corp. v. Allied Mech. Trades, Inc.*,
42 N.Y.2d 538 (1977) ..............................................................................................................10

*Caliko, SA v. Finn & Emma, LLC*,
No. 21-CV-3849 (VEC), 2022 WL 596072 (S.D.N.Y. Feb. 28, 2022) ...............................5, 8

*Capri Sun GmbH v. Am. Beverage Corp.*,
595 F. Supp. 3d 83 (S.D.N.Y. 2022)........................................................................................7

*CommScope, Inc. of N. Carolina v. Commscope (U.S.A.) Int'l Grp. Co., Ltd.*,
809 F. Supp. 2d 33 (N.D.N.Y. 2011)................................................................................10, 11

*Deere & Co. v. MTD Prods., Inc.*,
41 F.3d 39 (2d Cir. 1994).........................................................................................................10

*Doctor's Assocs., Inc. v. Patel*,
No. 18-CV-2386(GBD), 2019 WL 3916421 (S.D.N.Y. July 19, 2019) ................................15

*eBay Inc. v. MercExchange, LLC*,
547 U.S. 388 (2006)...........................................................................................................12, 13

*Focus Prods. Grp. Int'l LLC v. Katri Sales Co., Inc.*,
No. 15-CV-10154(PAE)(SDA), 2023 WL 3815276 (S.D.N.Y. June 5, 2023) ......................15

*Hasbro, Inc. v. Lanard Toys, Ltd.*,
858 F.2d 70 (2d Cir. 1988).........................................................................................................6

*Hormel Foods Corp. v. Jim Henson Prods., Inc.*,
73 F.3d 497 (2d Cir. 1996)................................................................................................10, 11

*Hounddog Prods., L.L.C. v. Empire Film Grp., Inc.*,
826 F. Supp. 2d 619 (S.D.N.Y. 2011)......................................................................................13

*Kelly Toys Holdings, LLC v. alialialiLL Store*,
606 F. Supp. 3d 32 (S.D.N.Y. 2022)..................................................................................12, 13

*Montblanc-Simplo GmbH v. Colibri Corp.*,
    692 F. Supp. 2d 245 (E.D.N.Y. 2010) ...................................................................13

*Morningside Grp. Ltd. v. Morningside Cap. Grp., L.L.C.*,
    182 F.3d 133 (2d Cir. 1999)..................................................................................9

*Nabisco Inc. v. Warner-Lambert Co.*,
    220 F.3d 43 (2d Cir. 2000).....................................................................................7

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*,
    572 U.S. 545 (2014)..............................................................................................14

*Pearson Educ., Inc. v. Vegara*,
    No. 09-CV-6832(JGK)(KNF), 2010 WL 3744033 (S.D.N.Y. Sept. 27, 2010)...............12, 13

*Polaroid Corp. v. Polarad Elecs. Corp.*,
    287 F.2d 492 (2d Cir. 1961)...............................................................................6, 7

*WPIX, Inc. v. ivi, Inc.*,
    691 F.3d 275 (2d Cir. 2012)..................................................................................13

*Shadow Box, Inc. v. Drecq*,
    71 Misc.2d 733 (Sup Ct. Nassau Cnty. 1972).........................................................10

*Sleepy's LLC v. Select Comfort Wholesale Corp.*,
    909 F.3d 519 (2d Cir. 2018)..................................................................................14

*Spin Master Ltd. v. 158*,
    463 F. Supp. 3d 348 (S.D.N.Y. 2020)....................................................................13

*Streamlight, Inc. v. Gindi*,
    No. 18-CV-987(NG), 2019 WL 6733022 (E.D.N.Y. Oct. 1, 2019) ..........................12

*Tiffany & Co. v. Costco Wholesale Corp.*,
    971 F.3d 74 (2d Cir. 2020)..............................................................................5, 6, 7

*U.S. Polo Ass'n, Inc. v. PRL USA Holdings, Inc.*,
    800 F. Supp. 2d 515 (S.D.N.Y. 2011), *aff'd,* 511 F. App'x 81 (2d Cir. 2013).................12, 13

*Venus by Maria Tash, Inc. v. Prinatriam Ltd.*,
    No. 21-CV-2098(LGS)(RWL), 2022 WL 4085747 (S.D.N.Y. Aug. 24, 2022).....................15

*Virgin Enters. Ltd. v. Nawab*,
    335 F.3d 141 (2d Cir. 2003)................................................................................8, 9

*Woodstock Ventures LC v. Woodstock Roots, LLC*,
    387 F.Supp.3d 306 (S.D.N.Y. 2019)........................................................................6

**Statutes**

15 U.S.C. § 1125 .................................................................................................5, 9, 15

28 U.S.C. § 1331 ...............................................................................................................4

28 U.S.C. § 1338(a) .........................................................................................................4

28 U.S.C. § 1367(a) .........................................................................................................4

N.Y. Gen. Bus. Law § 360-l ......................................................................................9, 11

Pursuant to this Court's order dated May 16, 2024 (ECF No. 32), Plaintiff Mintable Pte. Ltd. ("Plaintiff") submits proposed findings of fact and conclusions of law and a revised proposed default judgment, filed herewith.

## PROPOSED FINDINGS OF FACT

### A. Parties.

1.      Plaintiff is a Singapore-based company that operates a non-fungible token ("NFT") platform known for pioneering the concept of "gasless minting." Complaint, ECF No. 11 ("Compl.") ¶¶ 11, 14. Among other services, it offers a business-to-business ("B2B") platform through its Mintology division, which provides corporate clients with a platform and infrastructure to launch NFT campaigns. *Id.* ¶ 16. Plaintiff chose the unique moniker "mintology" after research revealed that no other company in the NFT or technology space was using that name. *Id.* ¶ 17.

2.      Defendant Mintology Inc. ("Defendant") is an NFT services platform incorporated in Delaware with its principal place of business in New York. *Id*. ¶ 12.

### B. Plaintiff was the first user of the "Mintology" mark in commerce.

3.      Recognizing an opportunity to expand its NFT services to businesses, Plaintiff began developing Mintology as its B2B division in the summer of 2021 and was promoting it to potential clients by August 2021. *Id.* ¶¶ 16-20. On July 9, 2021, Plaintiff registered the "mintology.app" domain name, which it continues to use to date. *Id.* ¶¶ 19, 50, 52.

4.      By December 2021, Mintology had expanded its reach and entered into contracts and negotiations with various widely known companies, including MasterCard. *Id*. ¶ 23. Plaintiff was showcasing its services at industry shows and panel appearances throughout 2022 and, following this pre-public work and promotion, launched to the general public via an article in a trade publication and on social media. *Id.* ¶¶ 26-29.

5.      As of September 2023, when the Complaint was filed, Plaintiff continued to build the Mintology division, with a customer base of over 1 million registered users. *Id.* ¶¶ 30, 50.

6.      Though Defendant registered the "mintology.studio" domain in August 2021, it did not launch a functioning website until the first quarter of 2022. *Id.* ¶¶ 32-33. Initially, the site was an NFT launchpad and studio, promoting modest NFT drops such as the "Cheeky Corgi" NFT presale. *Id.* ¶¶ 3, 12, 31, 33.

7.      In its United States Patent and Trademark Office ("USPTO") trademark application, Defendant claimed it first used the "mintology" name in commerce on December 6, 2021. *Id*. ¶ 34. At this point, Plaintiff has been using that identical mark with prospective brands and investors since the summer of 2021. *Id.* ¶¶ 11, 30, 34.

8.      In or around August 2022, Defendant pivoted its business model to mirror Plaintiff's and provide NFT services to brands. *Id.* ¶¶ 3, 35. At the time Plaintiff filed its motion for default judgment, Defendant had moved its operations to a new website, "app.mintology.studio," purporting to provide "Hot Brand Deals" via defunct links. Pl.'s Mem. of Law in Supp. of its Mot. for Entry of Default J. ("Default J. Mem."), ECF No. 26 at 4 n.1, 12.

### C.  Plaintiff sent multiple cease-and-desist letters to Defendant.

9.      Plaintiff sent its first cease and desist letter to Defendant on August 11, 2022, asserting Plaintiff's senior claim to the mark and stating that Defendant's continued use of the mark would constitute possible infringement because "such continued use would damage Mintable's goodwill and reputation because there is a high likelihood of consumer confusion." Compl. ¶¶ 37-38. Defendant did not respond. *Id.* ¶ 39.

10.      On August 26, 2022, Defendant filed a trademark application with the USPTO for the "mintology" name. *Id*. ¶¶ 5, 39. Defendant attested in the application that no other person had

the right to use the mark in commerce, even though it had received Plaintiff's cease-and-desist letter 15 days earlier. *Id*. ¶ 40.

11.    On August 31, 2022, Plaintiff sent another cease-and-desist letter. *Id*. ¶ 42. Defendant did not respond to that letter. *Id.* On September 14, 2022, Defendant sent a reminder to Defendant's CEO via Twitter and Instagram to respond to the cease-and-desist letter, which also went unanswered. *Id*. ¶ 43.

12.    On May 24, 2023, Plaintiff sent another cease-and-desist letter stating that Defendant was knowingly infringing on Plaintiff's trademark, that its use of the trademark was made with the apparent intent to trade on the goodwill associated with Plaintiff's mark, and that its attempt to register the mark after receiving notice of Plaintiff's senior use of the mark evinces bad faith. *Id.* ¶ 44. The letter requested that Defendant immediately cease and desist from all further use of the mark, cancel the trademark registration, deactivate all social media accounts, and respond to ensure an amicable resolution. *Id.* This letter also went unanswered. *Id.* ¶ 45.

13.    On June 8, 2023, Plaintiff sent a letter to the law firm that assisted Defendant in filing its trademark application, attaching a previous cease-and-desist letter and informing counsel of the potential litigation that could ensue. *Id.* ¶ 46. Though the law firm acknowledged receipt of the letter and confirmed they had contacted their client, Plaintiff heard nothing further. *Id.* ¶ 47.

### D. Plaintiff continues to use the "Mintology" mark in commerce but is confused with Defendant's business.

14.    Since sending the cease-and-desist letters, Plaintiff has continued to expand, including its partnership with MasterCard and Las Vegas-based Station Casinos. *Id.* ¶ 50. It has signed multiple contracts for fees ranging from $10,000 to $150,000 with both new and existing clients and has expanded its international reach. *Id.* Plaintiff continues to use the "Mintology" mark in commerce today. *Id*. ¶¶ 50-52.

15.    Plaintiff's B2B services, however, have been confused with Defendant's website. *Id.* ¶ 52. Plaintiff's CEO has been asked questions by journalists about Defendant, and potential partners and business suppliers have mistaken the companies. *Id.* Plaintiff's own marketing firm referenced Defendant's data and information while providing services to Plaintiff. *Id.*

**E. Defendant's actions after this action commenced.**

16.    At the time this action commenced, Defendant's social media pages, which last promoted a hotel giveaway, had not been updated since the first quarter of 2022. *Id.* ¶ 51.

17.    After this action commenced, Defendant's webpage was moved to a new domain, "app.mintology.studio," which purports to provide "Hot Brand Deals." Default J. Mem. at 10. The links on the site are all defunct. *Id.*

18.    After Defendant defaulted in this action (ECF No. 18), Plaintiff filed an opposition to Defendant's trademark application before the USPTO Trademark Trial and Appeal Board. ECF No. 30. Defendant did not file a timely response, and the Trademark Trial and Appeal Board entered a judgment by default and refused Defendant's trademark registration. *Id.*

**PROPOSED CONCLUSIONS OF LAW**

**A. The Court has Subject Matter Jurisdiction and Personal Jurisdiction over Defendant.**

1.    The Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a). The Court also has jurisdiction over Plaintiff's claim for trademark dilution pursuant to 28 U.S.C. § 1367(a).

2.    The Court has personal jurisdiction over Defendant. The complaint alleges that Defendant is a Delaware corporation with its principal place of business located in this District and has transacted business in the state, with sufficient contacts with New York. Compl. ¶ 12.

**B. Defendant is liable for trademark infringement under federal and New York state law.**

3.      The Lanham Act holds liable any person who, without the consent of the holder of the mark,

> uses in commerce any word, term, name, symbol, or device, or any combination thereof . . . which [] is likely to cause confusion, or cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person.

15 U.S.C. § 1125. To establish liability under the Lanham Act, a plaintiff must demonstrate that (1) it has a valid trademark entitled to protection and (2) the defendant's imitation of the trademark is likely to cause consumers confusion as to the origin or sponsorship of the defendant's goods. *Tiffany & Co. v. Costco Wholesale Corp.*, 971 F.3d 74, 84 (2d Cir. 2020) (internal citations omitted). A claim for common law trademark infringement under New York law mirrors the claim under the Lanham Act. *See A.M. Surgical, Inc. v. Akhtar*, No. 15-CV-1318 (ADS)(SIL), 2016 WL 11543560, at *5 (E.D.N.Y. Apr. 19, 2016).

4.      With respect to the first prong, trademark registration is "conclusive evidence of the validity of the registered mark," (*Tiffany*, 971 F.3d at 84 n.4), but an unregistered mark is protectible if it is "inherently distinctive." *Caliko, SA v. Finn & Emma, LLC*, No. 21-CV-3849 (VEC), 2022 WL 596072, at *8-9 (S.D.N.Y. Feb. 28, 2022). Marks are divided into four categories to determine distinctiveness: (1) generic; (2) descriptive; (3) suggestive; and (4) arbitrary or fanciful. *Abercrombie & Fitch Co. v. Hunting World, Inc.*, 537 F.2d 4, 9 (2d Cir. 1976). Only marks that are suggestive (meaning that it requires imagination to reach a conclusion as to the nature of the good) or arbitrary or fanciful (meaning the word was invented solely for the product) are considered inherently distinctive and therefore automatically protectible. *Id.* at 11 n.12.

5.      The mark here is protectible because it is arbitrary and fanciful. The Complaint alleges that "mintology" is not a real word and was created by Plaintiff specifically to launch this service. Compl. ¶ 17. In the alternative, the mark is protectible because it is suggestive. "Mintology" is derived from the term "minting," referencing the action of creating an NFT.[1] The term is therefore suggestive of the service it provides in the NFT space. *See Hasbro, Inc. v. Lanard Toys, Ltd.*, 858 F.2d 70, 75 (2d Cir. 1988).

6.      An inherently distinctive mark is only entitled to protection if the holder demonstrates priority use: "the user who first appropriates the mark obtains an enforceable right to exclude others from using it, as long as the initial appropriation and use is accompanied by an intention to continue exploiting the mark commercially." *Woodstock Ventures LC v. Woodstock Roots, LLC*, 387 F.Supp.3d 306, 315 (S.D.N.Y. 2019) (internal citations omitted). Plaintiff used the mark in commerce in the summer of 2021, approximately six months before Defendants claimed to use the mark. Compl. ¶¶ 11, 30, 34. Moreover, Plaintiff continues to use it today. *Id.* ¶¶ 50-52.

7.      Plaintiff has satisfied the first prong—that it has a valid trademark entitled to protection.

8.      With respect to the second prong, a plaintiff must demonstrate that the defendant's use of the mark is likely to cause consumer confusion. *Tiffany & Co.*, 971 F.3d at 84. To establish the likelihood of confusion, the Court considers eight factors articulated in *Polaroid Corp. v. Polarad Elecs. Corp.*, 287 F.2d 492 (2d Cir. 1961):

> (1) the strength of the trademark; (2) the degree of similarity between the plaintiff's mark and the defendant's allegedly imitative use; (3) the proximity of the products and their competitiveness with

---

[1] *See, e.g.* Hedera, *How to Mint an NFT*, https://hedera.com/learning/nfts/how-to-mint-an-nft (last accessed May 24, 2024).

> each other; (4) the likelihood that the plaintiff will "bridge the gap" by developing a product for sale in the defendant's market; (5) evidence of actual consumer confusion; (6) evidence that the defendant adopted the imitative term in bad faith; (7) the respective quality of the products; and (8) the sophistication of the relevant population of consumers.

*Tiffany & Co.*, 971 F.3d at 84-85 (citing *Polaroid*, 287 F.2d at 495; *Starbucks Corp. v. Wolfe's Borough Coffee, Inc.*, 588 F.3d 97, 115 (2d Cir.) 2009)).

9.    The Court must consider these factors "holistically in determining whether the party seeking to establish an infringement claim has demonstrated the probability of confusion of a substantial number of consumers of the relevant class." *Capri Sun GmbH v. Am. Beverage Corp.*, 595 F. Supp. 3d 83, 177 (S.D.N.Y. 2022) (quoting *24 Hour Fitness USA, Inc. v. 24/7 Tribeca Fitness, LLC*, 277 F. Supp. 2d 356, 366 (S.D.N.Y. 2003)). In evaluating these factors, the "ultimate question" for the Court is "whether consumers are likely to be confused." *Nabisco Inc. v. Warner-Lambert Co.*, 220 F.3d 43, 46 (2d Cir. 2000) (internal quotation marks omitted).

10.    Plaintiff has established under the *Polaroid* factors that Defendant's use of the "Mintology" mark in connection with its services is likely to cause confusion to the consumers.

11.    First, the mark is strong. Plaintiff, with a customer case of over 1 million registered users across 50 countries, has demonstrated that major domestic companies like MasterCard and Station Casinos, as well as international companies, are entering into contracts with its Mintology division, and that Plaintiff's Mintology division is represented at industry festivals. Compl. ¶¶ 23-24, 27-30, 50.

12.    Second,  Defendant not only employs the same "mintology" name but, during the pendency of this litigation, changed its website from "mintology.studio" to "app.mintology.studio," which much more closely resembles Plaintiff's "mintology.app". *Id.* ¶¶ 19, 31, 34;  Default J. Mem. at 10. The fact that Plaintiff's and Defendant's marks have different

colors and typefaces is "quite minor in relation to the fact that the name being used as a trademark was the same in each case." *Virgin Enters. Ltd. v. Nawab*, 335 F.3d 141, 149 (2d Cir. 2003).

13. Third and fourth, both Plaintiff and Defendant use their marks in the same NFT marketplace, targeting the same consumer base, and, in August 2022, Defendant pivoted its business model to mirror Plaintiff's, competing against Plaintiff in the same market and leaving no gap between the products that Plaintiff can bridge. Compl. ¶¶ 31, 35, 57, 73.

14. Fifth, Plaintiff alleged actual consumer confusion: candidates interviewing with Plaintiff have confused Defendant's website with Plaintiff's Mintology division, journalists have asked Plaintiff's CEO questions about Defendant's company, potential partners and suppliers have confused the two companies, and Plaintiff's marketing firm referenced Defendant's data and information when providing marketing services to Plaintiff. *Id*. ¶ 52.

15. Sixth, Plaintiff has sufficiently alleged Defendant's bad faith in using the mark. Defendant pivoted its business practices to mirror that of Plaintiff's and attempted to register the mark with the USPTO after receiving the first of many cease-and-desist letters. Compl. ¶¶ 19, 35, 37-47. In that trademark application, Defendant made an affirmative false statement asserting that it had no knowledge of any entities that would claim senior use of the mark even though it received Plaintiff's first cease-and-desist letter asserting such priority use. *Id*. ¶¶ 16, 19-20, 34, 37-40, 52-59. In situations where "the defendant is aware of the existence of plaintiff's mark and proceeds to use it . . . a finding of 'bad faith' has been inferred." *Caliko, SA*, 2022 WL 596072 at *13 (internal citations omitted).

16. Seventh, Plaintiff sufficiently alleged that Defendant's "Mintology" site offered lesser-quality services. Defendant's website began offering the "Cheeky Corgi" NFT, which was minted in-house, and there is no evidence that it partnered with established businesses once it

pivoted to its B2B business model. Compl. ¶ 33. Once Defendant pivoted its business model, it offered lesser-quality services by promoting "Hot Brand Deals" that linked to defunct webpages. Default J. Mem. at 10. Plaintiff's social media has promoted hotel giveaways and was last active in 2023. *Id*. ¶ 51.

17.    Lastly, the sophistication of the consumers factor "is neutral in this case." *Virgin Enters. Ltd.*, 335 F.3d at 151. Plaintiff and Defendant operate in the NFT market, a niche but growing industry where the consumers are presumed to discern the difference between Plaintiff's platform and Defendant's hotel giveaways. Compl. ¶ 51. That said, "the sophistication of buyers cannot be relied on to prevent confusion," particularly in instances where, as here, there is "evidence of actual confusion among several highly sophisticated . . . professionals," such as the journalists, marketing professionals, and prospective company partners and employees that have already confused the two companies. *Morningside Grp. Ltd. v. Morningside Cap. Grp., L.L.C.*, 182 F.3d 133, 143 (2d Cir. 1999); Compl. ¶ 52.

18.    On balance, these factors establish that consumers are likely to be confused by Defendant's use of the "Mintology" name. Considered with Plaintiff's satisfaction of the first prong, Plaintiff has established that Defendant is liable for trademark infringement pursuant to 15 U.S.C. § 1125 and the common law of New York.

### C. Defendant is liable for trademark dilution in violation of N.Y. Gen. Bus. Law § 360-l.

19.    Plaintiff seeks default on its claim for trademark dilution under New York's general business law. Default J. Mem. at 11-13. N.Y. Gen. Bus. Law § 360-l provides:

> Likelihood of injury to business reputation or of dilution of the distinctive quality of a mark or trade name shall be a ground for injunctive relief in cases of infringement of a mark registered or not registered or in cases of unfair competition, notwithstanding the absence of competition between the parties or the absence of

confusion as to the source of goods or services.

20.    To prevail on a claim for trademark dilution under New York law, a plaintiff must establish "(1) ownership of a distinctive mark; and (2) a likelihood of dilution of the mark*." A.M. Surgical, Inc*., 2016 WL 11543560, at *8 (quoting *Montblanc-Simplo v. Aurora Due S.r.L*., 363 F. Supp. 2d 467, 484 (S.D.N.Y. 2005)).  With respect to the former, "[d]istinctiveness, in this context, is measured by the strength of a mark for infringement purposes." *CommScope, Inc. of N. Carolina v. Commscope (U.S.A.) Int'l Grp. Co., Ltd*., 809 F. Supp. 2d 33, 39 (N.D.N.Y. 2011) (quoting *Lyons P'ship, L.P. v. D & L Amusement & Ent., Inc*., 702 F. Supp. 2d 104, 116 (E.D.N.Y. 2010)). As to the latter, dilution of a mark is generally established through "blurring," which occurs "where the defendant uses or modifies the plaintiff's trademark to identify the defendant's goods and services," or "tarnishment," which occurs when a "trademark is linked to products of shoddy quality, or is portrayed in an unwholesome or unsavory context."[2] *Deere & Co. v. MTD Prods., Inc*., 41 F.3d 39, 43 (2d Cir. 1994). While confusion and competition are not generally conditions for bringing a claim of dilution, courts are more likely to find dilution by tarnishment where the parties are competitors. *See Hormel Foods Corp. v. Jim Henson Prods., Inc.*, 73 F.3d 497, 507-08 (2d Cir. 1996).

21.    Plaintiff has established both elements. Under the first prong, Plaintiff alleges it is the owner of the distinctive "Mintology" mark. The moniker was chosen after "research revealed that no other companies in the NFT or technology space used the name." Compl. ¶ 17. Plaintiff

---

[2] However, the "blurring/tarnishment  dichotomy does not necessarily represent the full range of uses that can dilute a mark under New York law." *Deere & Co. v. MTD Prods., Inc*., 41 F.3d 39, 44 (2d Cir. 1994). Generally, the anti-dilution law extends trademark protection to guard against the "gradual whittling away" of a distinctive mark. *Allied Maint. Corp. v. Allied Mech. Trades, Inc.*, 42 N.Y.2d 538, 544 (1977); *see also Shadow Box, Inc. v. Drecq*, 71 Misc.2d 733, 734 (Sup Ct. Nassau Cnty. 1972) (anti-dilution law "protects … against any use of the symbol that may drain off any of the potency of the mark").

invested millions of dollars in developing the brand, resulting in corporate contacts and recognition of the Mintology name on industry panels and festivals. *Id.* ¶¶ 24, 39, 50; *see also* Section B, *supra*. Moreover, having alleged that it was the first user of the mark, Plaintiff is the senior user of the "Mintology" mark with priority rights to the name. *Id.* ¶ 55.

22.     Under the second prong, Plaintiff alleges a likelihood of dilution of the Mintology mark. Defendant, at one point, purported to offer the same services as Plaintiff and was its direct competitor. *Id.* ¶ 35. Now, its site purports to offer "Hot Brand Deals" under the Mintology name but is mostly non-functional.  Default J. Mem. at 4 n.1, 12. Plaintiff alleges that throughout its existence, Defendant's platform—responsible for only modest NFT drops and now a provider of defunct links (Compl. ¶ 33;  Default J. Mem. at 12)— has consistently delivered inferior services. Those in the NFT industry, including consumers and potential corporate clients, are likely to associate with Plaintiff  the shoddy quality of Defendant's products and services, as well as any detrimental events or negative publicity that may befall Defendant. Compl. ¶ 80. In fact, such association has already occurred: partners, suppliers, journalists, and Plaintiff's own marketing firm have confused Defendant's brand for Plaintiff's B2B division (*id.* ¶ 52), and this confusion with Defendant's site will "whittle away" at Plaintiff's Mintology brand. *See Hormel Foods Corp.*, 73 F.3d at 507 ("The *sine qua non* of tarnishment is a finding that plaintiff's mark will suffer negative associations through the defendant's use.").

23.     Plaintiff's allegations are sufficient to establish Defendant's liability for violation of N.Y. Gen. Bus. Law § 360-l. *See, e.g.*, *A.M. Surgical, Inc.*, 2016 WL 11543560, at *8; *CommScope, Inc.*, 809 F. Supp. 2d at 39.

### D.  Plaintiff is entitled to a permanent injunction.

24.     When a plaintiff has succeeded on the merits for trademark infringement and

trademark dilution claims, the Court considers four factors to determine whether a permanent injunction is appropriate: "(1) that [the plaintiff] suffered an irreparable injury; (2) that remedies available at law are … inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006) (applying standard to patent action); *see also U.S. Polo Ass'n, Inc. v. PRL USA Holdings, Inc.*, 800 F. Supp. 2d  515, 539-40 (S.D.N.Y. 2011), *aff'd,* 511 F. App'x 81 (2d Cir. 2013) (summary order) (applying *eBay* factors to trademark); *Kelly Toys Holdings, LLC v. alialialiLL Store*, 606 F. Supp. 3d 32, 52-53 (S.D.N.Y. 2022) (same).

25.     All the *eBay* factors counsel in favor of issuing the requested permanent injunction.

26.     First, Plaintiff has demonstrated that it has suffered an irreparable injury and, absent an injunction, will continue to do so as a result of Defendant's conduct. Compl. ¶¶ 52, 58, 74, 80. The "threat of continuing violations, as demonstrated by [Defendant's] default, qualifies as irreparable harm under the *eBay* standard." *Streamlight, Inc. v. Gindi*, No. 18-CV-987(NG), 2019 WL 6733022, at *8 n.9 (E.D.N.Y. Oct. 1, 2019) (quotation marks omitted), *report and recommendation adopted*, 2019 WL 6726152 (E.D.N.Y. Dec. 11, 2019); *Pearson Educ., Inc. v. Vegara*, No. 09-CV-6832(JGK)(KNF), 2010 WL 3744033, at *4 (S.D.N.Y. Sept. 27, 2010) ("A court may infer from a defendant's default that it is willing to, or may continue its infringement."). Plaintiff alleges that its "growth will be limited by the actual and potential confusion created by [Defendant's] continued use of the same mark in the same industry," and that Defendant's infringement has caused it "to lose control of the reputation of the 'Mintology' name and mark." Compl. ¶¶ 52, 80.

27.     Second, Plaintiff has no adequate remedy at law. A "plaintiff has no adequate

remedy at law where, absent an injunction, the defendant is likely to continue" its infringing conduct. *Pearson Educ.*, 2010 WL 3744922, at *4 (quotation marks omitted). Defendant has not responded to Plaintiff's cease-and-desist letters and has refused to appear before this Court. Compl. ¶¶ 39, 42, 45, 47; ECF Nos. 18, 32.[3] A strong probability exists here that, absent an injunction, Defendant will continue infringing on Plaintiff's trademark because it has done so willfully and failed to appear in this suit. *See Kelly Toys Holdings, LLC*, 2022 WL 2801077, at *8 (where a defendant defaults, "a court may infer that the defendant is willing to, or may continue its infringement"); *Montblanc-Simplo GmbH v. Colibri Corp.*, 692 F. Supp. 2d 245, 259 (E.D.N.Y. 2010) (as to second *eBay* factor, "the Court may consider defendant's default, particularly insofar as it suggests that defendant may continue its infringing behavior.").

28.     Third, the balance of hardships favors Plaintiff because "the Defaulting Defendant[] [has] not identified any hardships for the Court to consider—nor could they." *Spin Master Ltd. v. 158*, 463 F. Supp. 3d 348, 376 (S.D.N.Y. 2020); *Hounddog Prods., L.L.C. v. Empire Film Grp., Inc.*, 826 F. Supp. 2d 619, 633 (S.D.N.Y. 2011). It is "axiomatic" that an infringer cannot complain about the loss of ability to continue its infringing conduct. *See WPIX, Inc. v. ivi, Inc.*, 691 F.3d 275, 287 (2d Cir. 2012).

29.     Finally, because "[t]he consuming public has a protectable interest in being free from confusion, deception and mistake," a permanent injunction would benefit the public interest. *U.S. Polo Ass'n, Inc.*, 800 F. Supp. 2d at 541.

30.     Because all of the *eBay* factors favor entry of a permanent injunction, Plaintiff is entitled to a permanent injunction against Defendant enjoining it from:

---

[3] Plaintiff has also noted Defendant's failure to appear, in response to Plaintiff's opposition to Defendant's trademark application, before the Trademark and Trial Appeal Board. ECF No. 30.

- using the "Mintology" mark, or any simulation, reproduction, or colorable imitation thereof, in connection with the sale, advertising, promotion, marketing, distribution, or dissemination of NFTs, or of services related to NFTs, or in connection with any services connected to the blockchain;

- maintaining the "app.mintology.studio" site, any site that is markedly similar to Plaintiff's "mintology.app" site, or any site using the Mintology moniker calculated or likely to cause confusion or mistake in the mind of the public; or

- otherwise using the "Mintology" mark in a way calculated to deceive the trade or public into believing that Defendant's business, services, or products are in any way associated or affiliated with or related to Plaintiff.

### E. Plaintiff is entitled to attorneys' fees.

31.     The Court may award attorneys' fees in an "exceptional case," or one that "stands out from others with respect to the substantive strength of a party's litigating position … or the unreasonable manner in which the case was litigated." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014) (applying standard to patent action); *Sleepy's LLC v. Select Comfort Wholesale Corp.*, 909 F.3d 519, 530-31 (2d Cir. 2018) (applying *Octane* to Lanham Act's attorneys' fees provision). Whether a case is "exceptional" requires an evaluation of the totality of the circumstances and a variety of factors, including "frivolousness, motivation, objective unreasonable (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Octane Fitness,* 572 U.S. at 554 n.6.

32.     Considering all the circumstances, the unreasonable manner in which Defendant litigated this matter makes it an "exceptional case." Defendant coopted the Mintology mark and

14

Plaintiff's business B2B business model (Compl. ¶ 35), ignored Plaintiff's four cease-and-desist letters and efforts to settle this matter amicably (*id.* ¶¶ 39, 42, 45, 47), and continued its infringing conduct—including by applying to register the mark with the USPTO after receiving the first cease-and-desist letter from Plaintiff (*id.* ¶¶ 39-40). Notably, to address this last action, Plaintiff was required to appear before the USPTO Trademark Trial and Appeal Board to oppose Defendant's application. ECF No. 30. Defendant defaulted not only in this action, but before the Trademark Trial and Appeal Board, which entered judgment by default and refused registration of the mark to Defendant.[4] ECF Nos. 18, 30.

33.     Defendant's objectively unreasonable behavior, as well as the need to deter similarly willful conduct, support an award of attorneys' fees. *See Focus Prods. Grp. Int'l LLC v. Katri Sales Co., Inc.*, No. 15-CV-10154(PAE)(SDA), 2023 WL 3815276, at *3-4 (S.D.N.Y. June 5, 2023) (continued infringement after ignoring cease-and-desist letters amounted to willful and egregious conduct supporting an award of attorneys' fees); *Doctor's Assocs., Inc. v. Patel*, No. 18-CV-2386(GBD), 2019 WL 3916421, at *4 (S.D.N.Y. July 19, 2019) (case exceptional where infringement was willful and intentional, defendant failed to appear, and infringing conduct continued after receiving cease-and-desist letter); *Venus by Maria Tash, Inc. v. Prinatriam Ltd.*, No. 21-CV-2098(LGS)(RWL), 2022 WL 4085747, at *6 (S.D.N.Y. Aug. 24, 2022) (award of attorneys' fees "furthers the goals of the Lanham Act, including deterrence of similarly willful conduct by defendants and other possible infringers").

---

[4] The Trademark and Trial Appeal Board is not authorized to award money damages. *See* USPTO, "About TTAB," https://www.uspto.gov/trademarks/trademark-trial-and-appeal-board/about-ttab (last accessed May 24, 2024). Accordingly, the default judgment in that forum will not result in a double-recovery for Plaintiff.

DATED: May 24 2024                              Respectfully submitted,
       New York, New York

LEWIS BAACH KAUFMANN
MIDDLEMISS PLLC

By:  _/s/ Arthur D. Middlemiss_

    Arthur D. Middlemiss
    (Arthur.middlemiss@lbkmlaw.com)
    Elizabeth M. Velez
    (Elizabeth.velez@lbkmlaw.com)
    Annika B. Conrad
    (Annika.conrad@lbkmlaw.com)
    10 Grand Central
    155 East 44th Street, 25th Floor
    New York, NY 10017
    Telephone: (212) 826-7001
    Facsimile:  (212) 826-7146